## MAY DEPARTMENT STORES COMPANY, Appellant, v. LOUISVILLE & NASHVILLE RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted October 7, 1913. Opinion Filed November 4, 1913.

1. **APPELLATE PRACTICE: Conclusiveness of Verdict.** Where the jury are properly instructed, their verdict, rendered on conflicting evidence, is conclusive, on appeal.

2. **COMMON CARRIERS: Delivery of Shipment to Wrong Person: Liability of Carrier.** Where, in accordance with the usual custom obtaining between the parties, a notice was sent by a carrier to a transfer company authorized to receive shipments for the consignee, notifying it of the arrival of a shipment, and the notice was delivered by the transfer company to one of its teamsters, who gave it to a third person, thereby enabling the latter to pass himself off as the agent of the transfer company and obtain the shipment, the carrier was not liable for the wrong delivery, inasmuch as the consignee was responsible for the act of the teamster of its agent.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

AFFIRMED.

*Nathan Frank* and *Richard A. Jones* for appellant.

*H. R. Small* for respondent.

A carrier does not misdeliver when delivery is made in good faith with due care to one held out by the person entitled to delivery as his driver to receive from the carrier. (a) Where the fault or mistake of the person entitled to delivery is the cause of the failure to deliver the carrier is excused unless guilty of negligence. Elliott on Railroads, Vol. 4, Sec. 1535; sections 1489-90-91-92; Hutchinson on Carriers, Vol. 2, 3rd Ed., Secs. 678, 679; 6 Cyc. 473. (b) The carrier is responsible for correct delivery, but it is not the guardian of its patrons, nor when faultless itself must it answer for their mistakes or mend their misfortunes. Wilson v. Express Co., 27 Mo. App. 360, 43 Mo. App. 659, 37 L. R. A. 184.

REYNOLDS, P. J.—This is an action by plaintiff, appellant here, against defendant as a common carrier, for failing and neglecting to deliver certain merchandise consigned to plaintiff's assignor, or to deliver to anyone for it either at St. Louis, the destination of the shipment, or at all. It will save space to notice here that the original consignee and the appellant were each doing business under the trade name of "Famous," and when we refer to what is done by the appellant it is to be understood that it refers to the acts of the named consignee as well as of the appellant. It is alleged in the petition that delivery had not been made of the merchandise "on or about March 3, 1910, when such merchandise should have been so delivered at said destination and that at other times thereafter demand was made of defendant therefor," by appellant and payment of freight thereon offered to be made by it to defendant.

Defendant, in its answer, admits possession of the case of merchandise, a case of clothing, at its station in

St. Louis, and avers a delivery to one it had a right to believe was entitled to receive the shipment for plaintiff. This was put in issue by a reply.

The trial was before the court, to a jury, and there was evidence tending to show that the Noble Express & Transfer Co., a concern which hauled freight by wagon from railroad stations in St. Louis to the consignees, hereafter referred to as the express company, was authorized by appellant to receive from the defendant railroad company, respondent, notices of arrival of shipments and to receive shipments when the shipments were consigned to plaintiff; that two boxes of merchandise were consigned to plaintiff, one of them being the box in controversy, and that the express company, according to the custom prevailing between the parties, was notified that there were certain shipments at the depot of the respondent. This notification was on a postal card addressed to the express company. It was received by that company and handed to one of its drivers together with the necessary money to pay for the freight, as noted on the card. Testimony in the case tended to show that on presentation of such cards at respondent's depot and payment of the freight, delivery was made to the teamster who presented the card. The testimony also tended to show that the card in question was delivered to a teamster of the express company, but that it got out of the possession of the teamster to whom it was delivered by the express company and was presented to the agent of respondent at its depot by some other teamster. According to the testimony of appellant, it again came into the hands of the teamster of the express company. That teamster reported to the express company that when he presented the postal card to the railroad company he was told that the freight had already been delivered. This testimony as to the presentation of the card by this teamster is contradicted by the testimony of the respondent, which is to the effect that the postal card no-

tice was taken up by it when first presented by the other teamster. The teamster who had presented the postal card notice to respondent at the depot, paid the freight but only took away one case of the consignment specified in the notice. That was a box of clothing consigned to appellant and of the value of something over $1300 and is the lost package in dispute.

The evidence in the case also tended to show that other than the delivery to the teamster of the case of clothing consigned to the appellant, there was no delivery of that case to appellant. The point of controversy in the case, as developed by the testimony was mainly over the postal card referred to, which had been addressed to the express company by the railroad company. That turns on a question of fact, namely, did this card include this shipment to appellant? The original of the card as well as its carbon copy were in evidence before the court and jury and there was abundant testimony tending to show that, as understood between the parties, that is to say, the express company and the railroad company, this card did notify the express company of the arrival of several packages of merchandise for different shippers, the shippers designated, not by name but by what are called "pro" numerals. The evidence further showed that the "pro" numeral of appellant was the numeral 9, and many witnesses testified, with the postal card, which was a carbon duplicate, and the original before them, that the "pro" numeral 9 was on this card. This "pro" number referred to the numbers given to the freight bills, etc., describing the particular shipment, and appears to have been the file number of way bills, freight bills, etc., of consignments to "Famous." There was also evidence in the case tending to show that the delivery of all the shipments called for in this postal card was made to the driver who presented the card at the railroad depot, as before stated, but that he only took off the one case referred to, which was con-

signed to Famous, leaving the others on the platform
or in the warehouse of the railroad company, from
which, several days afterward, they were taken by the
express company and delivered by it to the several con-
signees, among them one of the two cases consigned to
appellant which had come in along with the missing
case. · There was evidence in the case tending to show
that the acts covering the delivery of this missing box,
the notification to the express company as the agent of
the consignee of its arrival, etc., were all in accordance
with the usual practice and custom of the parties
among themselves.

We do not think that a further statement of the
facts would be of any service. They are rather compli-
cated and it would be exceedingly difficult to make an
intelligent summary of them.

The question as to whether the postal card notice
included the two boxes consigned to appellant was gone
into very fully and there was very strong affirmative
testimony produced before the jury tending to prove
that it did. So this case was clearly one for the jury.
If it found as a fact that the missing package was in-
cluded in the postal card notice sent to the express com-
pany and that the delivery had been made in the usual
course of business between the parties and if the jury
were properly instructed on this matter, we are con-
cluded by their verdict. A careful reading of all the
testimony in the record satisfies us that there was
ample evidence to justify the jury in its finding.

We see no error in the instructions given at the in-
stance of plaintiff, or in the action of the court
in refusing one asked by appellant, which was
practically a demurrer to the evidence and should not
have been given. There is evidence tending to show
that the Noble Express & Transfer Company was the
agent in the transaction of appellant; that it received
notice of the arrival of the merchandise; that it turned
over this notice to one of its teamsters and that it did

this according to the usual custom prevailing between the parties; that this postal card notice was presented to the railroad company and the goods called for in it delivered to the person so presenting it. How it passed from the hands of the teamster of the express company into those of this other teamster, is not explained, although there is suggestive testimony to the effect that it was the result in connivance between the two teamsters. There is no evidence of any negligence, or failure of proper vigilance on the part of the railroad company; no evidence in the case under which liability can be settled upon it for the loss of the goods. This is not a case where a card authorizing delivery was lost and found by a stranger and presented by him. On the evidence in the case it is one where the card was given by the express company which was entitled to have delivery made to it to one of its own teamsters and that teamster, according to the tendency of the testimony in the case, put it into the hands of a third person and by that act enabled this third person to pass himself off on the respondent as the agent of the express company. The express company is responsible for the act of that teamster, and as the express company was unquestionably the agent of appellant, the latter must suffer the loss as between it and respondent. On a careful reading of the whole record in the case and consideration of it and of the instructions we find no reversible error.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.